UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re: Chapter 11(V)
Case No. 26-19103-SMG

Focus Utility Services, LLC,

Debtor.
_______________________________________/

**MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE RENT OR, ALTERNATIVELY, RELIEF FROM THE AUTOMATIC STAY**

Landlord-Creditor 2634 PIERCE LLC (the "Landlord"), pursuant to 11 U.S.C. §§ 105(a) and 365(d)(3), or in the alternative, 11 U.S.C. § 362(d), moves for an order (i) compelling debtor FOCUS UTILITY SERVICES LLC ("Tenant" or the "Debtor"), to pay administrative rent; or, alternatively; (ii) modifying the automatic stay provisions of 11 U.S.C. § 362(a) so that Landlord can commence an eviction proceeding. In support of this Motion, Landlord states:

**Background**

1. Landlord is a Florida limited liability company that owns the non-residential real property located at 2600 South SR 7, Miramar, Florida 33023.

2. Debtor is a Florida limited liability company with its principal place of business in Miramar Florida.

3. Effective August 31, 2024, Landlord and Tenant entered into a written lease agreement (the "Lease") for the non-residential premises known as 2600 South SR 7, Miramar, Florida 33023 (the "Premises") for a five-year term. A true and correct copy of the Lease is attached hereto as **Exhibit "A"**. Under the Lease, monthly rent started at $6,500, subject to annual adjustment, due on the 1st day of each month.

4. When the Lease commenced, the parties informally agreed to expand the Lease to include Tenant's use of the exterior yard, which is a separate parcel adjoining the Premises (the

"Yard"), for additional rent of $5,500 per month (the "Yard Rent").

5. Tenant's total current monthly rent obligation to Landlord under the Lease, including the Yard Rent, is $12,260.

6. Tenant remains in possession of the Premises and the Yard.

7. Tenant defaulted on its monetary obligations to Landlord under the Lease by failing to pay rent due May 1, 2026; June 1, 2026; July 1, 2026 (only half of the rent due was paid); September 1, 2026; and October 1, 2026, totaling $55,170.

8. Landlord's Declaration in support of this Motion is attached hereto as **Exhibit "B"**.

9. On July 12, 2026 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code. Tenant paid the August 2026 rent in full, but did not pay the rent due September 1, 2026 or October 1, 2026. From the Petition Date through October 1, 2026, Tenant's outstanding post-petition rent obligations to Landlord under the Lease are $24,520.

10. In September 2026, Landlord collected two rent checks from Debtor, dated September 18, 2026 ($10,000) and September 23, 2026 ($2,450). Both checks were returned for non-sufficient funds. Copies of the returned checks are attached hereto as **Exhibit "C"**.

**Argument**

11. Landlord seeks entry of an order (i) compelling Debtor to pay administrative rent; or, alternatively, (ii) modifying the automatic stay provisions of 11 U.S.C. § 362(a) so that Landlord can commence an eviction proceeding.

12. Section 105(a) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "**Code**"), authorizes the Court to issue any order, judgment or process necessary or appropriate to carry out the provisions of the Code. 11 U.S.C. § 105(a). More specifically, Code Section 365(d)(3) provides, in relevant part, that the trustee "shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real

property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).

13. More than 60 days have passed since the commencement of this case. Tenant failed to pay the previous two months of post-petition rent, and both checks it tendered in September were returned for non-sufficient funds. Landlord should not be forced to finance Debtor's post-petition operations through unpaid administrative rent.

14. In the alternative, the Court should modify the automatic stay provisions of Section 362(a) of the Code so that Landlord can commence an eviction proceeding. As explained by Judge Ray in *In re Gulfstream Crane, LLC,* No. 09-37091-BKC-RBR, 2009 WL 8189453 (Bankr. S.D. Fla. Mar. 27, 2009), "[p]ursuant to 11 U.S.C. § 362(d)(1), the Court may grant relief from the automatic stay upon a showing of 'cause.' In determining whether "cause" is present, a court must balance the potential hardship that will be incurred by a moving party if the automatic stay is not lifted, against the potential prejudice to the debtor and the debtor's estate." *Id.* Stated another way, because the term "cause" is undefined, courts look to the totality of the circumstances in deciding whether to grant stay relief in a particular matter under Code Section 362(d)(1). *See, e.g., In re Bryan Road, LLC,* 382 B.R. 844, 854 (Bankr. S.D. Fla. 2008).

15. Here, given Debtor's seeming inability to pay post-petition rent for more than two months, the actual, not just potential—continuing—hardship to be borne by Landlord outweighs any potential prejudice to Debtor and its estate. Stated another way, the totality of the circumstances warrants the granting of stay relief so that Landlord can recover possession and rent the Premises to a ready, willing and, unlike Debtor, a financially-able tenant.

**WHEREFORE**, Landlord respectfully requests that the Court enter an order (a) compelling Debtor to pay administrative rent; or, alternatively, (b) modifying the automatic stay provisions of 11 U.S.C. § 362(a) so that Landlord can commence an eviction proceeding. Landlord respectfully requests such other and further relief to which it is entitled and is

otherwise just and proper.

Dated: October 20, 2026

LAW OFFICES OF MALINDA L. HAYES
*Attorneys for 2634 PIERCE LLC*
378 Northlake Blvd., #218
North Palm Beach, FL 33408
(561) 537-3796
malinda@mlhlawoffices.com

By: */s/ Malinda L. Hayes*
MALINDA L. HAYES, ESQ.
Florida Bar No. 0073503

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. mail, postage prepaid, to FOCUS UTILITY SERVICES LLC at 2600 South SR 7, Miramar, Florida 33023, and to all parties receiving notice via CM/ECF on October 20, 2026.

By: */s/ Malinda L. Hayes*
MALINDA L. HAYES, ESQ.

# EXHIBIT A

# COMMERCIAL LEASE

This lease is made between **2634 Pierce LLC** **whose address is** **2875 NE 191 ST #601 AVENTURA FL 33180**, herein called Lessor or Landlord), and **FOCUS UTILITY SERVICES, LLC.,** herein called Lessee or Tenant).

WHEREFORE, Lessee hereby offers to lease from Lessor the premises situated in the City of MIRAMAR, County of BROWARD, State of Florida, described as **2600 State Road 7, Miramar FL 33023, (Property I.D. 5141 25 04 1260)** under the following TERMS and CONDITIONS:

1. **Term and Rent**. Lessor demises the above premises for a 5 YEARS term, commencing **September 15th, 2024** and expiring **August 31st, 2029**, at the monthly rental rate of **$6,500.00 per month plus sale tax ($195.00)**, payable in advance on the first day of each month for that month's rental, during the term of this lease. **Monthly rent shall increase 4% annually on every September 1.** Any sums required to be paid under this Lease not paid when due shall bear interest at 18% per annum. Rental payments shall be considered late if not received by the fifth (5th) day of each month. Lessor reserves the right to assess a late charge of five 5% of any late rent payment amount, which charge shall be treated as Additional Rent and shall be immediately due and payable and shall not be waived by acceptance of rental payments. This charge is not a penalty but liquidated damages to the lessor occasioned by the delay in receipt of its funds, including any additional bookkeeping which may be caused thereby. Tenant shall have an option to extend this lease for an additional 5 years with the same terms and conditions. **Rent for September 2024 shall be prorated to $1,184.50.**

**All rental payments shall be made to Lessor, VIA ACH only as follows:**

**Zelle YONLEVY@ME.COM**

**Account: 2634 PIERCE, LLC**
**Bank: JP Morgan Chase Bank**
**AC#** [redacted]
**ABA#** [redacted]

2. **Use**. Lessee shall use and occupy the premises for **electrical contractor office and vehicle storage** and any other permitted use under current zoning. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.

3. **Care and Maintenance of Premises**. Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and always, maintain the premises in good and safe condition, including plate glass, electrical wiring, plumbing, and heating installations and any other system or equipment upon the premises, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. Lessee shall be responsible for all repairs required, except for the roof, exterior



Initials JT JL

Electronically Signed using eSignOnline™ [ Session ID : 86f97830-0897482d-8f4501228f726d4d ]

walls, structural foundations. Tenant shall be allowed to build a fence at the property at tenant's expense.

4. **Alterations**. Lessee shall not, without first obtaining the consent of Lessor, make any alterations, additions, or improvements, in, to or about the premises, which should not be unreasonably withheld.

5. **Ordinances and Statutes**. Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof by Lessee.

6. **Assignment and Subletting**. Lessee may not Assign or sublet any portion of the premises without the express written consent of Landlord which may be withheld by Landlord for any reason. Any default by an approved sub-lessee shall be deemed a default by the Lessee.

7. **Utilities**. All applications and connections for necessary utility services on the demised premises shall be made in the name of Lessee only, and Lessee shall be solely liable for utility charges as they become due, including water & sewer, electricity, Trash removal, Oil and any other Disposal services.

8. **Entry and Inspection.** Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time prior to the expiration of this lease, to place upon the premises any usual "For Rent" or "For Lease" signs, and permit persons desiring to lease the same to inspect the premises.

9. **Possession.** If Lessor is unable to deliver possession of the premises at the commencement hereof, Lessor shall not be liable for any damage caused thereby, nor shall this lease be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Lessee may terminate this lease if possession is not delivered within Ten days of the commencement of the term hereof.

10. **Indemnification of Lessor**. Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claim for damages, no matter how caused.

11. **Insurance**. Lessee, at his expense, shall maintain plate glass and public liability insurance including bodily injury and property damage insuring Lessee and Lessor with minimum coverage as follows: $1,000,000.00.

Lessee shall provide Lessor with a Certificate of Insurance showing Lessor as additional insured. The Certificate shall provide for a ten-day written notice to Lessor in the event of cancellation or material change of coverage. To the maximum extent permitted by insurance policies which may be owned by Lessor or Lessee, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation which might otherwise exist.

 Initials JT JL

Electronically Signed using eSignOnline™ [ Session ID : [illegible] ]

12. **Eminent Domain**. If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premise, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent, and any additional rent, shall be apportioned as of the termination date, and any rent paid for any period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a claim for any taking of fixtures and improvements owned by Lessee, and for moving expenses.

13. **Destruction of Premises**. In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same, provided that such repairs can be made within sixty (60) days under existing governmental laws and regulations, but such partial destruction shall not terminate this lease, except that Lessee shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Lessee on the premises. If such repairs cannot be made within said sixty (60) days, Lessor, at his option, may make the same within a reasonable time, this lease continuing in effect with the rent proportionately abated as aforesaid, and in the event that Lessor shall not elect to make such repairs which cannot be made within sixty (60) days, this lease may be terminated at the option of either party. In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction of the building in which the premises may be situated shall terminate this lease.

14. **Lessor's Remedies on Default**. In the event of a default by Lessee under the terms of this Commercial Lease, Lessor may terminate this lease on not less than three (3) days' notice to Lessee. On the date specified in such notice the term of this lease shall terminate, and Lessee shall then quit and surrender the premises to Lessor, but Lessee shall remain liable as hereinafter provided. If this lease shall have been so terminated by Lessor, Lessor may at any time thereafter resume possession of the premises by any lawful means and remove Lessee or other occupants and their effects. No failure to enforce any term shall be deemed a waiver.

15. **Security Deposit**. Lessee shall deposit with Lessor on the signing of this lease the sum of **$13,000.00** as security deposit for the performance of Lessee's obligations under this lease, including without limitation, the surrender of possession of the premises to Lessor as herein provided. If Lessor applies any part of the deposit to cure any default of Lessee, Lessee shall on demand deposit with Lessor the amount so applied so that Lessor shall have the full deposit on hand at all times during the term of this lease.

16. **Attorney's Fees**. In case suit should be brought for recovery of the premises or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee at both the trial and appellate level.

17. **Waiver**. No failure of lessor to enforce any term hereof shall be deemed to be a waiver.

18. **Lockout.** Intentionally removed.



Initials JT JL

Electronically Signed using eSignOnline™ [ Session ID : [illegible] ]

19. **Notices**. Any notice which either party may, or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address first written, or at such other places as may be designated by the parties from time to time.

20. **Heirs, Assigns, Successors**. This lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

21. **Subordination**. This lease is and shall be subordinated to all existing and future liens and encumbrances against the property.

22. **Radon Gas Disclosure**. As required by law, Landlord makes the following disclosure: "Radon Gas" is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels that radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your country public health unit.

23. **Parking.** Tenant shall have an exclusive use of parking at the property.

24. **Entire Agreement**. The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parities.

IN WITNESS WHEREOF, the parties hereto set their hands and seal this 9th day of September 2024.

LANDLORD:
2634 PIERCE, LLC

Jonathan Levy
Signature:

Jonathan Levy
Print Name:

TENANT:
FOCUS UTILITY SERVICES, LLC

Justin Toubeaux
Signature:

justn toubeaux
Print Name:

09/11/2024 02:33 PM



Initials JT JL

Electronically Signed using eSignOnline™ [ Session ID : [illegible] ]

# Exhibit "A"

## RULES AND REGULATIONS

*These rules and policies are incorporated into and considered part of the Lease*

1. The buildings and surrounding property must be kept clean, neat and free of all safety, fire and health hazards.

2. The tenant is responsible for all interior maintenance including painting, cleaning, periodic servicing of air conditioning and other mechanical equipment, electrical bulbs, fixtures outlets etc. and plumbing.

3. Any alterations to the leased premises must be approved, in advance, by KOLO 4, LLC and any work that is approved must be done in accordance with, and permitted by, all state, county or local building codes and zoning ordinances.

4. All work or activities carried out on the premises must be of a nature that is permitted by and is in accordance with, all laws, ordinances and zoning requirements and your occupational license.

5. The tenant is responsible for obtaining any occupational licenses as required by the state, county or local governmental agencies.

6. All applicable utilities must be promptly put into the tenant's name and paid in a timely manner.

7. Tenants must maintain liability insurance in limits not less than $250,000.00. KOLO 4 LLC. must be named as an additional insured with a copy sent to propertymanager@ascotrealtyusa.com

8. Any hazardous materials kept or stored on the premises or utilized in connection with the permitted activities on the site, must be handled in strict accordance with all applicable EPA or other governmental agency rules including, but not limited to, notices, permitting, signage and reporting. NO HAZARDOUS MATERIALS OR POLUTANTS OF ANY KIND MAY, AT ANY TIME, BE DISPOSED OF IN THE PLUMBING DRAINS, PARKING LOT DRAINS OR IN THE GROUND ANYWHERE ON THE PREMISES. At the termination of the lease, all hazardous materials must be removed from the premises and disposed of properly.

9. All hazardous or dangerous materials must at all times be stored in proper approved containers.

10. All tenants must recognize that all other tenants have an equal right to the utilization of their own spaces and access to the common areas so please keep your own vehicles, and your customers' vehicles and equipment, in your own area and don't block the other tenants or their customers. The way you maintain your area, and the appearance that you give, will have a reflection on the other tenants in the building or area so it is to the benefit of all tenants to keep the entire premises clean, neat and professional.

Notify the management of KOLO 4 LLC immediately of any problems with the structure, equipment, grounds, hazards, violations of policies or criminal activity on the property or in the general area.



Initials JT JL

Electronically Signed using eSignOnline™ [ Session ID : [illegible] ]

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

Chapter 11(V)
Case No. 26-19103-SMG

Focus Utility Services, LLC,

Debtor.
_______________________________________/

**DECLARATION OF JONATHAN LEVY IN SUPPORT OF MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE RENT OR, ALTERNATIVELY, RELIEF FROM THE AUTOMATIC STAY**

I, **Jonathan Levy**, declare under penalty of perjury the following:

1. **Declarant's Capacity.**
   I am the President of 2634 Pierce LLC, a Florida limited liability company ("Landlord"), which owns the non-residential real property located at 2600 South SR 7, Miramar, Florida 33023. I am over the age of eighteen (18), competent to testify, and authorized to make this Declaration on Landlord's behalf. I have personal knowledge of the matters set forth herein, including through my review of Landlord's business records described below.

2. **Lease.**
   Effective August 31, 2024, Landlord and debtor Focus Utility Services, LLC ("Tenant" or "Debtor") entered into a written lease agreement for the non-residential premises known as 2600 South SR 7, Miramar, Florida 33023 (the "Premises") for a five-year term (the "Lease"). A true and correct copy of the Lease is attached to the Motion as Exhibit "A." Under the Lease, monthly rent started at $6,500, subject to annual adjustment, due on the 1st day of each month.

3. **Yard Rent**
   As the Lease commenced, the parties informally agreed to expand the Lease to include use of the exterior yard, which is a separate parcel adjoining the Premises, for an additional $5,500 per month ("Yard rent").

4. **Combined Monthly Rent.**
   Tenant's total current monthly rent obligation to Landlord under the Lease, including Yard rent, is $12,260.

5. **Petition Date.**
On July 12, 2026 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code, commencing this case.

6. **Payment History.**
Tenant failed to pay rent due for May and June 2026. Tenant paid half of the rent due for July. Tenant paid August rent in full, but Tenant did not pay September or October rent due post-petition.

7. **Post-Petition Returned Payments.**
Landlord personally collected rent checks from Debtor dated September 18 ($10,000) and September 23 ($2,450). Both checks were returned for non-sufficient funds.

8. **Rent Arrears.**
As of **October 16, 2026**, the total amount of **rent due and unpaid** under the Lease, exclusive of late fees and costs, is **$55,170, of which $24,520 is for post-petition periods**, calculated as follows:

| Month | Rent Due | Amount Paid | Balance |
|---|---|---|---|
| 05/26 | $12,260 | $0 | $12,260 |
| 06/26 | $12,260 | $0 | $24,520 |
| 07/26 | $12,260 | $6,130 | $30,650 |
| 08/26 | $12,260 | $12,260 | $30,650 |
| 09/26 | $12,260 | $0 | $42,910 |
| 10/26 | $12,260 | $0 | $55,170 |

9. **No Tender or Escrow.**
Tenant has not tendered the post-petition rent due for September 2026 or October 2026 to Landlord, deposited rent into the registry of any court, or provided any form of adequate protection for its continued occupancy of the Premises and the Yard.

10. **Ongoing Occupancy.**
Tenant remains in possession of and continues to occupy the Premises and the Yard as of the date of this Declaration.

11. **Records.**
As President of Landlord, I am familiar with Landlord's books and records, which are made at or near the time of the events they record by, or from information transmitted by, persons with knowledge, and are kept in the course of Landlord's regularly conducted business activity. The amounts stated herein are based on those records, which are true and correct.

12. **Purpose.**
This Declaration is executed in support of Landlord's **Motion to Compel Payment of Administrative Rent or, Alternatively, Relief from the Automatic Stay** (the "Motion") filed in this case.

Executed at ____________, Florida on October 19, 2026.

**I declare under penalty of perjury that the foregoing is true and correct.**

______________________________ Dated: 10/19/26

**Jonathan Levy, President**

**2634 Pierce LLC**

**EXHIBIT C**

CHASE for BUSINESS®

Printed from Chase for Business

## Returned Deposit Details

The paying bank returned the check unpaid.

Total: **$10,000.00**

Post date: Sep 23, 2026

Front Back


NSF 1st

PREMIER BANK

00230569

Focus Utility Services LLC
2600 S State RD 7
Miramar, FL 33023

DATE: Sep 18, 2026

Amount : Ten Thousand and 00/100*****

Pay To : 2634 Pierce LLC

$ **10,000.00

MEMO : September 2026 Yard Rent

AUTHORIZED SIGNATURE

⑈00230569⑈ ⑆[redacted]⑆ [redacted]⑈

Account number: [redacted]

Routing number: 10400087

Check #: 000000230569

Reason for return: Insufficient funds

See original deposit >

CHASE for BUSINESS®

Printed from Chase for Business

## Returned Deposit Details

The paying bank returned the check unpaid.

Total: **$2,450.00**

Post date: Sep 25, 2026

Front Back

NSF 1st

Focus Utility Services LLC
2600 South State Road 7 2600 S State Rd 7
Miramarc FL 33023-4102

PREMIER BANK

00230570

DATE: Sep 18, 2026

Amount : Two Thousand Four Hundred Fifty and 00/100*****

Pay To : 2634 Pierce LLC

$ **2,450.00

MEMO : September 2026 Yard Rent

AUTHORIZED SIGNATURE

⑈00230570⑈ ⑆[redacted]⑆ [redacted]⑈

Account number: [redacted]

Routing number: 10400087

Check #: 000000230570

Reason for return: Insufficient funds

See original deposit >